All right, we're ready for our next case, James v. City of Monroe. Mr. Caudill. Thank you, your honor. May it please the court, my name is Beau Caudill. This is Sophia Pappalardo. We represent the appellant, Angelia James. This court should reverse the district court's order denying James's motion for preliminary injunction because James has shown that she is likely to succeed on the merits of her claim that the City of Monroe initiated removal proceedings and removed her from elected office, first, in reliance on an unconstitutionally overbroad and vague code of ethics, and second, in retaliation for James's protected speech. Why do you have standing to bring the vagueness and overbreath claims? We have standing because there is not an adequate and independent ground to remove James from office cited in the removal order. In Doe v. Virginia Department of State Police, this court recognized that a plaintiff faces a hurdle to establishing traceability and redressability under the Article III standing analysis when there is an independent rule, policy, or decision that would bar the plaintiff from obtaining the relief sought even if the plaintiff were successful on their claim. Your claim on overbreath goes to the code of ethics. There are certain parts of the code of ethics. Is that correct? We have challenged specifically three sections of the code of ethics as being both overbroad and vague in our briefing before this court. We, in our view, there is no other section of the code of ethics. Well, you look at the removal order and the first ground is assault and battery on Officer Egghooth. The second has two provisions, the city charter and the code of ethics. I'm not aware that you challenged the city charter at all. And the third is making false reports to the police. So why wouldn't those be ample independent grounds that you essentially don't challenge? And that would nix those claims of overbreadth and vagueness. They are not independent because to be adequate, they must rely on the challenge sections. And I'll address that first with adequacy and second with independence. So that formulation of the independent grounds, it comes from Iodakai v. Patterson. But assault and battery and false reports to police appear to be independent with no reference to the charter or the code of ethics. But therefore inadequate. And the reason that they are inadequate is because they do not relate to the duties of her office. And if the city of Monroe specifically constrained themselves at JA147, that's the a motion resolution, excuse me, in the a motion rules, which I believe at JA157, section 6C, the city of Monroe says that it must prove to remove James, not just that she committed misconduct, but that she committed misconduct related to the duties of her office. And it is under any circumstance. And therefore an assault may be criminal. It may give rise to civil liability, but it has nothing to do with her office. Therefore inadequate to remove her. Similarly, false reports to police has no relationship to the duties of a city council member's office and therefore inadequate to remove her. Contrast that with Iodakai v. Patterson, where the court determined that the university found that there were other grounds for removal, the facilitation of parties where sexual assaults occurred, providing alcohol to minors, that themselves tripped... It's a slightly different context, but there have been lots of judges and other public officials who over the years have been impeached and removed from office because they've committed crimes. Crimes that didn't necessarily relate to their judicial duties. Why is this any different? Well, it's difficult to say that what happened in those other circumstances has any real application here because here we have an ordinance and the adoption of a set of rules that specifically describe the circumstances in which the city could remove James. They set their own rules for removal. And those rules provided that the duties must be related to her office. So we think ground one and three, as listed at JA 570, are not adequate grounds for removal. And that leaves only the city charter and code of ethics violations that they say occurred when she purported to fire, demote, or promote police officers. Is there an allegation in your complaint that you would argue supports standing here? Your Honor, we say in the complaint that she was removed in reliance on these challenge sections. We describe our overbreadth and vagueness claims both as being rooted to the fact that the city relied specifically on the overbroad and vague provisions of the code in order to justify her removal. And then you argue that it's unclear whether counsel would have been removed if not for the code of conduct. As part of the merits analysis, that's right. So once we pass standing, which is not supposed to be a high hurdle in terms of establishing grounds to bring the claim, and we go to the merits analysis, the question becomes, was that a but-for cause? And one of the primary errors below, in our view, was that the district court equated but-for causation with sole cause. And so in its opinion, the district court described these other grounds that the city could have used to remove James. But what we have alleged and what we think is right there in black and white in the removal order is that the city relied on these unconstitutionally overbroad and vague provisions of the code. What about the charter? So the city does cite to its charter. In our supplemental briefing, we took the position that that is essentially the same as saying she violated the code of ethics because the city charter contains certain provisions that make the general law applicable to council members. The general law includes the adoption of this code of ethics. What they are going to say is that she violated section 4.8 of the city charter. Well, if she did, why isn't that sufficient? It's not true. I don't think they actually found that, and here's why. In the hearing officer's report at JA 127, the hearing officer actually goes to great pains to try to convince this council not to place great weight on the provisions of the code of ethics. What the hearing officer said is that there's this section of the city charter, section 4.8, that prohibits them from directing conduct or activities of city employees. She violated that. That's a duty of her office. You can remove her for that reason. We don't agree that it's one-to-one firing, demoting, and promoting an employee, that that is one-to-one with directing their conduct or activities, but let's assume it is for just a moment. The city council then writes its removal order, and the city council makes no reference... What about directing them to arrest felons that weren't felons? But the city council didn't remove her for that. JA 570 says for making false reports to the police, not for directing them to arrest or investigate. It says nothing about that particular aspect of her conduct. It just says she made false reports. Wouldn't that be a false report? The false report in this context was he's a felon and he's not. Not arrest that felon. And what's interesting is section 4.8, it's not cited anywhere in the removal order. They don't mention it anywhere. In fact, the city charter is only mentioned twice. At JA 569 in paragraph 1, the city says, we have a charter. Here's the session law by which it was adopted. And then in paragraph 8, they say she violated the city charter. Now compare that to what they did with the code of ethics. At JA 568 paragraph 89, the city council takes great pains to list every single provision of the code of ethics that they thought she violated. They nowhere say anything about section 4.8, and they knew about it because the hearing officer at JA 127 told them, rely on this section. So you're relying a lot in terms of the rules that are set here. Tell me just generally, what impact does it have that she was an elected official? How does that deal with her, particularly her First Amendment retaliation claim? And I say that, you know, we typically treat these differently than ordinary people. And we courts, as Judge Agers pointed out, they're reticent to interfere with an elected bodice discipline of a member. So why should we do so here? Well, I would make two points. The first point I would make is that this court and other courts have recognized that public officials, public employees, for example, enjoy First Amendment rights. They're somewhat limited. But a public official's First Amendment rights are the same as ordinary citizens. Not only that, but the Supreme Court recognized in a recent decision, Houston Community College Systems v. Wilson, that public officials also have, they represent their constituents. And so orders that exclude or remove them also reach to their constituents. This court in Wittener, which is a case that the court asked us for supplemental briefing on, recognized the difference between discipline, intrabody discipline, which occurred here, they censured her, and an order removing a public official. So there is evidence here that the district court found that she assaulted an officer. Why is that not sufficient alone to justify removing her from office? We don't suggest that it couldn't be sufficient. And in fact, I would... But did you challenge the finding that she, in fact, did assault an officer? I'm not, I would quibble a bit with whether the district court found that she assaulted an officer versus found that there was testimony in the record to that effect, and that the hearing officer made that conclusion. But regardless of whether... Testimony to the contrary. No, no. James acknowledged... District court makes a finding that there's testimony to that effect, nothing to the contrary. What would indicate that that's not a finding? Well, we have argued that as a matter of law, because of her diminished capacity at the time, that she could not have criminally assaulted someone, or even perhaps civilly assaulted them, because she could not form the necessary intent. But we would concede, for the purposes of this argument, that the city council at least concluded that an assault occurred. What we suggest is, though... And that alone would not be sufficient if, in fact, there's evidence where, in your view, you have conceded she did assault an officer, and that alone is not sufficient for removal by a city council? We think it could be, but what we have argued to the district court and here is that this court and the constitutional inquiry is not into what the city could have done, it is what did the city do. And in this particular instance, we think that the black and white, everything from the a motion resolution all the way through to the removal order shows that the city relied on an unconstitutionally overbroadened vague code of ethics, and also on a retaliatory motive that they were acting in response to her speech. I do want to spend just a minute talking about the initiation of these proceedings, because I think this is one area in which the district court gave a little bit of short shrift. We have argued that not only she was removed from office ultimately because in retaliation for her speech, but that these proceedings were initiated. The city adopted an ordinance to move forward with them, enacted rules, subjugated her, put her in a position where she appeared at a hearing, had to defend herself, and then removed her, because of core protected speech, including statements that she made to the press. So at J147, we have the a motion resolution. I know you're in the middle of a different topic, but I want to go back to your answers to Judge Wynn. The removal order specifically says costs exist for her removal due to her committing assault and battery on Officer Acuff. Tell me again why that's not sufficient? So it would not be an adequate ground, if the court's asking about standing, it would not be an adequate ground because it is not related to the duties of her office. So that by itself would not justify her removal. And in terms of causation under the retaliation analysis, yes, that is one thing, one reason for which they said they removed her in combination with other reasons, including protected speech activity. So if she robbed a bank or ridden through town and shot several people gratuitously, she still gets to be on city council? No, Your Honor. No, she would not still get to be on city council. Why not? I mean, if she can assault a police officer and she gets to stay on city council, but if she commits bank robbery, she doesn't. I'm not understanding how you're differentiating that. Well, Your Honor, it's not a function of whether they, whether she committed criminal conduct. The rules that they set for themselves and the way that they prosecuted her, the path that they chose was to show that she committed what they refer to as non-criminal misconduct in office. That is, the city, at both the petition stage, the evidentiary phase, and even the hearing before council, did not tell council this was a criminal assault that, for which you should find is so infamous that it justifies her removal. They could have to seek her removal under that standard. I do think, Your Honor, that if they had done that, outside of the context of the normal criminal process, using what they did here, which is a standard of evidence where they didn't have one, there was no requirement that they prove anything by preponderance, by clear and convincing, or beyond a reasonable doubt. If they had done that, that would raise another host of constitutional concerns, and that's probably why they called it non-criminal misconduct in office. But that by itself, the fact that she assaulted an officer, even if they found that, and that finding, what they refer to as a finding, appears in the... I see my time is up. May I just briefly finish? We're not concerned today with what they could have done. They perhaps could have removed her for committing that assault, but that is not what they did. They removed her for three reasons, including protected speech activity. They initiated these removal proceedings for reasons including protected speech activity. The burden should have shifted. The district court didn't do that, and this court should reverse it. Let me ask you one other question. She seeks to be placed back in office, and that term ends this year, and there's an election going on now. Yes. She in that election? She's running for mayor. It's not in the record, but she is running for mayor right now. Her term would end first week of December. So it's now September. If we don't issue an opinion until the end of the year, this is moot, then I take it. Yeah, I think the request for preliminary injunctive relief would be moot. What if we don't issue it until after the election? I think that the request would remain alive until her term of office would end. And someone is in that spot now? No one has been, by an outside agreement, no one has been placed in that spot. They've operated with six council members, including the mayor. All right. Thank you very much. Mr. Hageman? Thank you, Your Honor. May it please the court, I'm Bob Hageman. Representing the defendants along with me is Cosmo Zinkow and Pat Flanagan in the gallery. So the questions from the court go to most of the points that we would make an and that is, in fact, a P.I., a reversal of a denial of a P.I. seeking to put Ms. James back on the city council. Let me just ask you, because I'm intrigued with the argument on the other side. It seems to me the focus is you have some rules and you haven't followed them. And regardless that you could have done it, but the reason that you did it was based upon your rules, almost sounds like a procedural due process type argument to me, a violation of procedural due process. You've set it up, the rules and stuff. And how do you respond to that argument that you have these rules and somehow I guess they incorporate a violation of the ethics and of the charter? Is that so? So there is not a procedural due process claim in this case. I'm not sure I understand exactly what rules were allegedly not followed. I do agree that the original initiation of the proceeding did reference this press conference. And when we got the case, we looked at that and we realized. Let's talk about the same thing. You said you don't understand what rules it is. What do you perceive is the statement being made on the other side regarding what wasn't followed? I'm not sure I follow, Your Honor. I think it may have been that we cited her. She was cited for misconduct in office, non-criminal misconduct in office, and we would agree with that. He went to great lengths to try to argue that her conduct was not in office. Let me ask Judge Wynn's question a different way. Yes, Your Honor. When you had the hearing before the city council on the motion petition, what were the rules for that hearing? Or were there any? Well, the rules were elaborate. They established a two-part process with phase one being evidentiary before a hearing officer. The hearing officer was charged with making recommended findings of fact conclusions of law, which the hearing officer did. It's in a record of 45-page document. The hearing officer presented that to the city council, and then the city council made the ultimate decision and entered their order, which, as Your Honor correctly noted, cites three basis for removal. One, assault on an officer. Two, very, very critical, and I'll elaborate on this, violation of the code of ethics and charter, and it specifically says in purporting to fire, demote, and promote officers. It doesn't say anything about the alleged unconstitutionally vague and overbroad provisions. It specifically speaks to the conduct and the actions beyond her authority under the council manager form of government. And I would even if you were to strike the entire code of ethics, which I don't think is warranted, but even if you were, the charter itself establishes the council manager form of government and places personnel decision-making authority in the hands of the city manager. So was there, in your view, standing to bring either the overbreadth or vagueness challenges? Yes, Your Honor. I made a comment to council. Nothing like an order from the court for and clearly the issue becomes one of addressability and standing for that matter. Because there were valid grounds for the decision of the city council to remove Ms. James from council, even if, and we're not conceding it, we didn't debate it because it wasn't necessary, even if the provision cited as being allegedly overbroad and unconstitutionally vague, even if they are, that does not warrant the relief that's being sought, which is the reversal of the adequate and independent basis as courts talked about them at length. Now to the question of... And therefore, they lack standing? And therefore, they lack standing at a minimum to seek the preliminary, the relief that's being sought at a minimum. I mean, regarding the rest of the case and maybe a DJ action, I think we could argue that below when this case goes back to the district court. But that would cover the overbreadth and vagueness arguments, but there's a separate retaliation claim, which would not have the same constitutional question with regard to it. So the retaliation claim is based on the allegation that the council acted in response to things that Ms. James said to the press. And as I said earlier, that was part of the original discharging order, and we did not prosecute that because we recognized that that would clearly invoke First Amendment considerations. Council argued that merely by citing that to initiate the proceeding, in essence, it taints the entire case. We don't believe that's right. Judge Conrad below rejected that argument as well. And the retaliation claim does clearly have a four. Judge Conrad, again, pointed to the council's order. It doesn't say anything. There was no evidence presented. There was no argument made about the press conference. The case is devoid, other than it being in the charging document, the case is devoid of anything regarding those allegedly First Amendment-protected comments by Ms. James. The council divides his claim, as I understand it, into two parts, one dealing with the actual and I assume the argument there is that because there was a reference in the initial reference to the city attorney that cited issues with the press release, that that affects the initiation of the proceedings. So tell us again why that can't succeed here. Two responses, Your Honor. One, as Judge Conrad pointed, I think he analogized to a flaw in a search warrant, I believe. The fact that there may have been a flaw in the charging document does not forever taint the case, number one. Number two, even under a Mount Healthy analysis, and Judge Conrad said there was no evidence that the city council relied on her press conference. But second, even if Mount Healthy and a burden-shifting analysis applied, which we don't think you even get there, but if it did, once you shift the burden, the decision is clear that there were non-pretextual, non-First Amendment-based reasons for removing her from office. So I do want to speak a little bit about in office. The council goes to great lengths to say that she didn't do these things in office. She literally, well, figuratively wrapped the cloak of her office around her shoulders the entire day in question. She repeatedly, first of all, they all knew she was a city council member, all the police officers she engaged with, and she repeatedly invoked her office and her authority and demanded respect because of that. The fact that she wasn't authorized by her office to commit assault, the fact that she wasn't authorized by her office to hire and fire employees, the fact that she wasn't authorized by her office to file false police reports does not mean she was not acting as a city council member. And let me give you a comparison. Had she been on vacation in California and been unhappy with the service of the waitress or waiter in a restaurant and said, you're fired, I'm firing you, clearly that was not related to or would not pertain to her office, and nobody would think it was. But everybody who encountered Ms. James that evening knew she was acting as a city council member, and she made it clear to everybody that she was. So, assuming she had standing, and even assuming that the Code of Ethics was vague and overbroad, could there still be a grounds for removal if there were independent grounds for the removal beyond those challenge sections? Well, and your honor, yes, and they were. Again, there's nothing in the record that shows she was a city council member. The conclusion of Law 8 in the city council's order says, just cause, and Judge Agee, you quoted this earlier, just cause exists for the removal for three reasons. One, committing assault and battery on Officer Acott, unrelated to the Code of Ethics. That alone is enough without standing, even if we assume standing, even if we assume that the challenge sections of ethics are vague and overbroad, then the assault alone would be enough, in your view, the city council to remove her? Yes, your honor. Yes, your honor. She did it. She physically laid hands on Officer Acott, and she did it in the context of threatening his job, and she was there speaking as a member of the city council. And there's no question in your mind that that was a basis upon which the council relied? It's specifically in their removal order. That is a basis. Three basis for removal, that was the first one. And Judge Conrad, as a matter of fact, found that she did assault an officer, and there is no challenge to any of Judge Conrad's findings of fact. And of course, as the court knows, the standard on appellate review in this case... Did he make a finding of fact, opposing counsel says, in fact, he said, well, there's testimony that that happened. So did he make a finding of fact to that effect? I believe he did. Well, I can't put my finger on it quickly, your honor, but he found that she committed assault on Officer Acott. The trial court did. The second independent reason, and I feel like repeating myself a little bit, but the second independent reason is a violation of the Code of Ethics and the city charter. Now, counsel seems to say that you can't even get to the charter but through the Code of Ethics. First of all, the Code of Ethics says obey all laws, one of which is the city charter, and also act as a body, as a city council, not as an individual. So those are in the Code of Ethics. But even if the Code of Ethics was not even cited, as I said before, Monroe operates under the counsel-manager form of government, and personnel decisions are vested in a city manager. She attempted to exceed her authority by cloaking herself as a city council member by firing, promoting, and demoting officers, including the chief of police. Independent of the alleged overbroad and unconstitutionally provisions in the Code of Ethics, which aren't even referenced, the conduct was the purported personnel decisions that she made. Again, even if you were to strike the entire code, the charter remains an independent basis for finding her grounds for removal. And then finally, making multiple false reports to the police, again, not contingent on the Code of Ethics. The fact that it may have been unethical to do so does not change the fact that doing it directly, even without a Code of Ethics, would not be a basis for removal. It is a basis for removing her from office. So the law, at least that applies here with regard to the city of Monroe, when a council member is removed, how are they elected? Are they elected in districts? I don't know that. I mean, in North Carolina, cities are... I'm bringing it up, has to do with the individuals who may be specifically represented in the district. And then typically you may have a follow-up election or some other to fill. But I understand the seat has not even been filled. It would indicate someone there, if it is district, has been unrepresented for the council for a period of time. That's going to end in just a few months anyway. It's going to end in a few months. Your Honor, there's a variety of structures in North Carolina municipalities. Some have districts and some at-large. That's why I asked you that question. Yes. We're all the same. I just want you to tell me what Monroe is. Yes. I'll confess I don't know whether she sits in a district seat or an at-large seat. In council, we did have conversations when she was removed about filling the vacancy. And again, not in a record, but council brought it up, we did have an agreement between the city and the plaintiffs. For a couple of reasons, he was seeking a ruling that he was hoping would be until we saw what the district court judge first on a TRO and then on a PI. And there was some fear that had the city moved to fill the vacancy, there would be a quo warranto proceeding and additional litigation that the city council decided was not in its best interest. So they made the decision to leave the seat vacant. And as Your Honor correctly noted, that vacancy will end, I believe it's the first Monday in December following the November election. So is the mayor elected separately from council? Yes. So Ms. Monroe's council seats, I mean Ms. James' council seats going to be filled regardless? Correct. Correct. In fact, when this event occurred in September, on September 9th of 2021, she was a candidate for mayor. She was in the middle of a four-year city council term. And I the mayor is elected citywide separately for a two-year term. So she ran in 2021 for mayor, and now she's running for mayor again in 2023 when her four-year term that she was elected to in 2019 expires. What else you got for us? Unless the court has questions for me, I think I've covered the issues I would like to cover. All right. Thank you very much, Mr. Pagama. Mr. Cottle, you have some time of rebuttal. Thank you, Your Honor. JA577 is the portion of the district court's opinion and its recitation of the facts as to what happened with Officer Acoff. What the district court says is that there was, excuse me, I'm looking for the space. So what page, tell us again, what page are you on? I'm on 577, Your Honor. First full paragraph on 577. This is what the district court says. At the hospital, plaintiff resisted an officer's attempts to usher her into a private room and an assault. He did not arrest or charge her with assault because she was a council member. That's as close as we come to a finding that an assault actually occurred. There's another reference at 582. The court's discussing the fact that the council found or concluded that there was an assault, and they did. That's in the record at JA570, that they concluded that there was an assault. We don't think the district court separately found that this constituted an assault on Officer Acoff. With respect to the retaliation claim, there's a statement that there's no evidence that the city relied on statements to repress in its final decision to remove her. But of course, the city as a municipal organization in North Carolina can act only pursuant to its ordinances and only in accordance with the rules that itself adopts to control its conduct. JA147 is the a motion resolution. Without that document, these proceedings do not happen. And JA147 says that we want you, city attorney, to put in the petition to have her removed information about statements that she made to the press after September 9 and 10. And if we look at 458 and 459 of the JA, Council Member Gordon is the council member who introduced this resolution, the a motion resolution. And what Council Member Gordon says is that, in his view, the reason that the resolution... Did any of that actually make it into the a motion petition? No. As my friend on the other side indicated, they knew that that would be a First Amendment problem if they were to proceed on that theory, and so they didn't. But remember, the a motion petition was only filed in the first place because of JA147, the a motion resolution. Without that, there is no removal proceeding and there is no removal. Causation was an issue before the district court. Well, if none of that made it into the actual petition, how does that help you? Because the petition to remove her was not what instituted these proceedings. What instituted these proceedings was the a motion resolution. So, yes, once they enact the a motion resolution, they constrain themselves to other conduct because they know that talking about press conferences and trying to have her removed for things that she said to the press would be problematic. But by that time, we have already started the ball rolling down the hill. That is, the causal chain is already established. Without that first act, without someone rolling the ball, we don't reach the bottom of the hill. But you concede she was not removed for anything she said at the press conferences, correct? I concede that it's not in That's correct. They do not set it forth as grounds for her removal, but we believe that the court and a jury could look at Councilmember Gordon's statements and could look at JA147 and decide that this was not about what happened on September 9th and 10th. And not just that, but the fact that after September 9th and 10th, on September 25th, the council censures her. And they censure her for all of the same conduct. They decided at that time this censure is November after the election that Councilmember Gordon says that's no longer sufficient because she has not apologized. She's not apologized for the things that she said. She has not been accountable for the things that she did. We, speaking for the council at JA459, Councilmember Gordon says, my colleagues and I are disappointed in her for not apologizing and not being that if the conduct in and of itself would justify removal, that by taking a censure, you then preclude, they preclude it from then taking any further action? No, I don't think so. But I do think that a censure is constitutionally different from a removal order. Because a censure is essentially just the speech of the city. Let me ask you something. It's just a matter of the county and the state, and you only derive certain authority and powers by virtue of what the state confers upon you. You're satisfied that that has been conferred the authority upon the city council to remove someone, and there are no restrictions or no permutations that are allowed under state law for subdivision of the government to do this? I see my time is up. May I answer? Yes, please. That is a complicated question. The, it appears as a matter of North Carolina law, some very old North Carolina law from the late 19th, early 20th centuries, that North Carolina recognizes this power as derived from the common law, power of corporations to remove their members by vote of corporation. It is a body corporate. Our courts in North Carolina have said that power exists. Now, it has been very rarely exercised, and there is no precedent concerning it being exercised really past the early 20th century. The case of Berger v. New Hanover County Board of Commissioners, a trial level decision, is the only decision that purports to analyze it and decide what the proper scope of that authority is. We think it exists, but we think it was not exercised constitutionally here. We've asked the court reverse. Thank you very much. We'll come down to Greek Council and take a very brief recess and then take up our last case. This Honorable Court will take a brief recess.
judges: G. Steven Agee, James Andrew Wynn, Stephanie D. Thacker